UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEANETTE R. WEAKLAND,

                                        Plaintiff,

         v.                                                    **DECISION AND ORDER**
                                                               10-CV-519S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

         1.       Plaintiff Jeanette R. Weakland challenges an Administrative Law Judge's

("ALJ") determination that she is not disabled within the meaning of the Social Security Act

("the Act").  Plaintiff alleges that she has been disabled due to discogenic lumbar/cervical

spine pain, right shoulder bursitis, adjustment disorder with mixed anxiety and depression,

and headaches since January 1, 2004.  Plaintiff contends that her impairments render her

unable to work.  She therefore asserts that she is entitled to supplemental security income

("SSI") under the Act.

         2.       Plaintiff filed an application for SSI on September 8, 2007, alleging disability

since January 1, 2004.  The Commissioner of Social Security ("Commissioner") denied

Plaintiff's initial application, and Plaintiff requested a hearing.  An administrative hearing

was then held on August 13, 2009 before ALJ Robert T. Harvey, at which Plaintiff

appeared and testified.  The ALJ considered the case *de novo*, and on September 25,

2009, issued a decision denying Plaintiff's application for benefits.  Plaintiff filed a request

for review with the Appeals Council, which, on May 27, 2010, denied Plaintiff's request for

review.  Plaintiff filed the current civil action on June 22, 2010, challenging Defendant's

final decision.[1]

3. On December 13, 2010, the Commissioner filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Briefing on that motion concluded January 28, 2011, at which time this Court took the motion under advisement without oral argument.  For the reasons set forth below, the Commissioner's motion is denied and this case is remanded for further proceedings.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the

---

[1]The ALJ's September 25, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 4, 2007 (R. at 10);[2] (2) Plaintiff's discogenic lumbar/cervical spine pain, right shoulder bursitis, and adjustment disorder with mixed anxiety and depression are "severe" impairments within the meaning of the regulations (Id.); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (Id.); (4) Plaintiff retained the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently, sit 2 hours in an 8 hour day, and stand/walk 6 hours in an 8 hour day, subject to various limitations (R. at 11);[3] and (5) Plaintiff could perform her past

---

[2] Citations to the underlying administrative record are designated as "R."

[3] Plaintiff could not work in areas with unprotected heights, or around heavy, moving, or dangerous machinery or climb ropes, ladders, or scaffolds.  (R. at 11.)  She had occasional limitations in bending, climbing, stooping, squatting, kneeling, crawling, and balancing.  (Id.)  She also had occasional limitations in reaching in all directions with the right upper extremity, and in pushing/pulling with the upper extremities. (Id.)  Finally, she could only work in a job with a moderate amount of stress.  (Id.)

relevant work as a restaurant hostess (R. at 15).   Ultimately, the ALJ concluded that

Plaintiff was not under a disability as defined by the Act from September 4, 2007, through

September 25, 2009, the date of the ALJ's decision.   (Id.)[4]

10.     Plaintiff advances three challenges to the ALJ's decision.   First, Plaintiff

argues that the ALJ erred in not finding that her headaches constituted a severe

impairment.   Second, she advances two related arguments to the effect that the ALJ's RFC

assessment is not supported by substantial evidence.   Third, she argues that the ALJ erred

in finding her capable of performing her past relevant work without consulting a vocational

expert ("VE").

11.     Plaintiff first argues that the ALJ incorrectly determined that her headaches

did not constitute a severe impairment.   She asserts that the opinion of neurologist Dr.

Marc S. Frost does not support that determination.   Further, Plaintiff draws attention to her

own substantial testimony on how her headaches interfered with her daily functioning.

12.     At step two of the five-step analysis, an ALJ faces two distinct questions.

First, an ALJ must determine whether an impairment satisfies the durational requirement.

Unless an impairment is expected to result in death, an impairment must "last[] or [] be

expected to last for a continuous period of at least 12 months" before it can be considered

potentially disabling.   20 C.F.R. § 416.909.   Second, an ALJ must determine whether an

impairment "limits a claimant's ability to do 'basic work activities.'"   Gray v. Astrue, No. 04

Civ. 3736(KMW)(JCF), 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009) (quoting 20

C.F.R. § 416.921).   "An impairment or combination of impairments is 'not severe' when

---

[4]Although the Decision states September 4, 2007, it appears from the rest of the opinion and the parties' submissions, that the correct date was September 8, 2007, the date Plaintiff filed her SSI application.

medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." Ahern v. Astrue, No. 09-CV-5543 (JFB), 2011 WL 1113534, at *8 (E.D.N.Y. Mar. 24, 2011) (citing 20 C.F.R. § 404.1521).  In making this determination, an ALJ may "rely on what the [medical] record says, but also on what it does not say." Johnson v. Astrue, No. 09 Civ. 6017(RMB)(JCF), 2010 WL 5573632, at *11 (S.D.N.Y. Dec. 3, 2010) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983)).

13.     Here, the ALJ found that Plaintiff had several severe impairments.  (R. at 10.) He explicitly stated, however, that her headaches were a "non-severe impairment," and cited Exhibit 10F in support.  (Id.)  Exhibit 10F, in turn, references a series of medical records from the Dent Neurological Institute covering the period from September 29, 2004 to August 22, 2007.  (R. at 298-307.)  Those pages include a summary by Dr. Frost, including his impression that Plaintiff suffered from chronic headaches, which worsen when she lies down.  (R. at 300.)  The same summary also includes a pair of discrepancies in Plaintiff's statements and behavior.  First, Plaintiff stated that she has been experiencing headaches for many years, although treatment notes show her stating that the headaches only went back to the middle of 2004.  (R. at 299.)  Second, and of greater significance, was the fact that Plaintiff saw Dr. Lixin Zhang on November 18, 2004 for headache-related problems.  (Id.)  During that visit, Plaintiff reported having a headache that was "located all over the brain everyday," along with frequent visual hallucinations twice a day, as well as blackouts.  (R. at 301-302.)  Dr. Zhang concluded that her symptoms were primarily the result of excessive stress caused by a pending divorce, sleep deprivation, and narcotic overuse.  (R. at 302.) Dr. Zhang recommended that she "desperately" needed psychiatric evaluation due to her frequent visual and auditory hallucinations and set up an

appointment with a psychiatrist; he also recommended discontinuing some of her medications.  (R. at 302-303.)  Plaintiff neither acted on these recommendations, nor returned for a reevaluation until August 22, 2007.  (R. at 299.)  An Electroencephalogram ("EEG") Report from September 29, 2004 suggested "mild cerebral dysfunction" but not "specific with regard to etiology."  (R. at 306.)

Elsewhere in his decision, the ALJ clarified his reliance on Exhibit 10F.  The ALJ gave significant weight to Dr. Frost's opinion regarding Plaintiff's overuse of narcotic medications and drew an adverse inference against Plaintiff on the basis that she failed to follow through on Dr. Zhang's recommendations despite the alleged severity of her headaches.  (R. at 13-14.)  Although this part of the ALJ's reasoning was not included under step two of the sequential analysis, this Court nevertheless takes it into consideration in determining whether remand is required.  See Chavis v. Astrue, No. 5:07-CV0018 (LEK/VEB), 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010) (noting that even "[wh]ere an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis").

14.    An individual's failure to comply with prescribed treatment may form the basis of a denial of benefits where a disability results because of that failure.  See 20 C.F.R. § 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work . . . . [i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . .").  Prior to so finding, an ALJ must inquire into the reasons for a plaintiff's failure to follow his or her doctor's prescription.  See SSR 82-59, 1982 WL 31384, at *2 (S.S.A. 1982) (noting that plaintiffs "should be given an opportunity to fully express the specific reasons(s) for not following the

prescribed treatment"); see generally Smith v. Astrue, No. 09-CV-470 (TJM/VEB), 2011 WL 6739509, at *4 (N.D.N.Y. Nov. 4, 2011) (discussing SSR 82-59 and procedures ALJ must follow in questioning plaintiff).

Alternatively, SSR 96-7p applies where an ALJ draws an adverse inference against a plaintiff's description of a symptom's severity based on a failure to follow prescribed treatment.  SSR 96-7p provides, in pertinent part, that:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements . . . . On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.

SSR 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996).  Crucially, such an inference may not be made "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  Id.

15.     Having reviewed the pertinent parts of the record and the ALJ's reasoning, this Court is persuaded that no error was committed.  The record shows that Dr. Frost did inquire of Plaintiff why she failed to follow Dr. Zhang's recommendations.  (R. at 299.) Plaintiff "simply state[d] that other things came up."  (Id.)  Plaintiff has not provided any other citation to the record that contains an alternate reason for why she did not seek further treatment for her headaches, or why she did not at the very least follow through with Dr. Zhang's prescribed plan of seeing a psychiatrist for further evaluation and cutting down

on her medications.  See Cappa v. Astrue, No. 09-CV-583 (FJS/VEB), 2011 WL 3236496, at *9-*10 (N.D.N.Y. June 29, 2011) (remanding case where ALJ failed to inquire into plaintiff's failure to seek treatment and physician's note showed plaintiff concerned that psychological counseling would not be covered by insurance); see also Smith, 2011 WL 6739509, at *5 (remanding case where ALJ drew adverse inference against plaintiff's credibility based on non-compliance with treatment, but later stated that non-compliance was result of psychological and/or cognitive causes).

16.     This Court further notes that Plaintiff's credibility was called into question in other parts of the ALJ's decision.  For example, when Plaintiff saw Dr. Pratibha Bansal in July of 2006 for pain in her right shoulder, Plaintiff was asked if she had been carrying out the exercises she had been assigned.  (R. at 12.)  Plaintiff, apparently falsely, stated that she had, but was then unable to reproduce them, despite the fact that Dr. Bansal had twice previously gone over them with her.  (R. at 204, 206-207, 209.)  Dr. Bansal noted that Plaintiff "seems to come in only when she needs her methadone scripts" and that Plaintiff left when Dr. Bansal did not provide further narcotics.  (R. at 204.)  Plaintiff's drug seeking behavior serves to generally discount her testimony as it relates to the severity of her symptoms.  See Ketcham v. Astrue, No. 5:10-cv-140, 2011 WL 3100673, at *6 (D. Vt. July 25, 2011) (holding that ALJ's credibility finding was supported by substantial evidence based, in part, on plaintiff's misuse of narcotic medication); Metz v. Astrue, No. 1:06-CV-1509 (FJS/DRH), 2010 WL 2243343, at *14 (N.D.N.Y. Apr. 21, 2010) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations."); see also Kellems v. Astrue, 382 Fed. Appx. 512, 515 (7th Cir. 2010) (listing cases).  Thus, the ALJ was not required to credit Plaintiff's testimony.

17.     In addition, Plaintiff has also not pointed to any part of the medical record that

shows her headaches impair her ability to do basic work activities.  See Dumas, 712 F.2d at 1553 (Commissioner entitled to rely on what record does not say).  Plaintiff references her own subjective statements, but "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A). As the ALJ did, this Court notes that Dr. Frost's report stated his suspicion that a significant component of her symptoms was "analgesic overuse and rebound as well as depression and psychosomatization."  (R. at 300.)  The ALJ took further note of the fact that an EEG showed only a mild cerebral dysfunction, but no specific etiology, and no evidence of epileptogenic process.   (R. at 13.)  This provides evidence supporting the ALJ's determination that the headaches themselves were not a severe impairment.  See Howe-Andrews v. Astrue, No. CV-05-4539 (NG), 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007) (noting that "Commissioner is entitled to evaluate the credibility of a claimant in light of medical findings and other evidence").  Accordingly, the ALJ was not required to find Plaintiff's headaches a severe impairment based solely on her testimony.

18.     Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence.  Plaintiff draws attention to the fact that the ALJ did not cite any physician-conducted RFC assessment, but instead made inferences from other medical evidence.  Separately, Plaintiff asserts that the ALJ also erred in assessing Plaintiff's psychological impairment.  Plaintiff argues that the ALJ ignored an August of 2009 report by psychologist Dr. Christopher J. Pino whose findings are incompatible with the ALJ's determination that Plaintiff could work in a job involving no more than a moderate amount of stress.  Plaintiff's final argument concerning the ALJ's RFC assessment is that his treatment of Dr. Renee Baskin's consultative psychiatric evaluation was contradictory.

19.     "The Commissioner defines RFC as a claimant's 'maximum remaining ability

to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . 8 hours a day, for 5 days a week, or [on] an equivalent work schedule.'" Sorensen v. Comm'r of Soc. Sec., No. 3:06 Civ. 554, 2010 WL 60321, at *8 (N.D.N.Y. Jan. 7, 2010) (quoting SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) (emphasis omitted)). The ALJ must consider all the relevant evidence in the record, "including the claimant's physical abilities, mental abilities, and symptoms, pain, and other limitations which could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545).

In making an RFC assessment, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d). "The ALJ must specify which functions the claimant is able to perform and may not "simply mak[e] conclusory statements regarding [the claimant's] capacities." Sorensen, 2010 WL 60321, at *8 (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). Then, after assessing the plaintiff's functional limitations and abilities, the ALJ categorizes the RFC into exertional levels of work, e.g., "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

20.    In the present case, the ALJ made a very detailed RFC determination. Plaintiff's RFC was determined to include the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, to sit for 2 hours in an 8 hour workday, and to stand or walk for 6 hours in an 8 hour workday. (R. at 11.) The ALJ then went on to list a variety of specific limitations on top of these global limitations. (Id.) Plaintiff appears to take issue primarily with the former.

The ALJ gave significant weight to the consultative physical examination of Dr.

11

Kathleen Kelley.  (R. at 14.)  Dr. Kelly stated that lifting, carrying, reaching for, pulling, and pushing heavy objects could exarcebate Plaintiff's problems.  (R. at 312.)  Further, "[w]alking, standing, or even sitting of [sic] any length of time without breaks as necessary may led [sic] to discomfort."  (R. at 312.)  The decision also references the opinions of Doctors Jerry Tracy, Zhang, Bansal, and Frost.  A review of the relevant opinions reveals that each found Plaintiff's gait normal and full muscle strength in her arms and legs.  (R. at 183, 188, 209, 300, 302, 310).  Thus, to the extent Plaintiff argues that the ALJ did not rely on sufficient medical evidence in determining Plaintiff's lifting, standing, and sitting capacities, the decision is clearly replete with references to such medical evidence, and Plaintiff's argument can be rejected.  In so doing, the ALJ specifically discounted Plaintiff's assertions of the severity of her pain based on her own daily activities and the medical record.  (R. at 14-15.)[5]  Plaintiff's memorandum does not identify with any specificity which of the ALJ's exertional findings was not supported by substantial evidence, and this Court will not further speculate as to which parts Plaintiff found objectionable.  Although Plaintiff appears to argue that the ALJ substituted his own judgment for that of competent medical opinion, Plaintiff goes into no further detail concerning which of the medical opinions the ALJ erroneously ignored.   Given nothing more, this Court concludes that the ALJ's extensive review of Plaintiff's treatment history, complete with the weight given to various of the physicians' opinions, evidences no error requiring remand.  See SSR 96-8p, 1996 WL 374184, at *7 (RFC assessment must include narrative discussion describing evidence supporting each conclusion).

      21.     In contrast to this lack of specificity, Plaintiff does take particular issue with

---

[5]These activities included cleaning, doing dishes, doing laundry, vacuuming, sweeping, mopping, and shopping.  (R. at 15.)

the ALJ's assessment of her psychological impairment, and argues that the ALJ improperly concluded that Plaintiff could perform jobs with a moderate amount of stress.

At the August 13, 2009 hearing, Plaintiff established that she would be permitted to submit additional evidence into the record following the hearing. Among that evidence was a report by Dr. Pino finding Plaintiff to suffer from panic disorder and possible post-traumatic stress disorder, with a Global Assessment of Functioning ("GAF") score of 50.[6] In his decision, the ALJ noted that "claimant testified that she is not seeing a psychiatrist or psychologist for mental problems." (R. at 14.) The ALJ went on to find that, based on this, "her mental deficits are not as severe as alleged." (Id.) Clearly, Plaintiff did, in fact, go see Dr. Pino. A question thus arises whether the ALJ properly considered Dr. Pino's report. The Commissioner urges that there is nothing incorrect about the ALJ's statement because, up to the time of the hearing, Plaintiff had not had such an appointment. The Commissioner further argues that the ALJ did explicitly consider Dr. Pino's opinion, but misidentified Dr. Pino as "Dr. Nagalla." (Def.'s Reply 4-5, Docket No. 10.) A review of the record shows that Dr. Rajeswara Nagalla was the doctor who referred Plaintiff to Dr. Pino. (R. at 385.) In light of the ALJ's reference to Plaintiff's appointment in August of 2009, and the ALJ's citation to exhibits authored by Dr. Pino, this Court agrees that the decision's reference to Dr. Nagalla was a mere typographical error. Mindful that such mistakes can happen and, here, do not otherwise upset or confuse the matters at issue, remand on this ground is not necessary.

22.     Considering the ALJ's treatment of Dr. Nagalla's (actually Dr. Pino's) report,

---

[6]A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Arrington v. Astrue, No. 09-CV-870 A(F), 2011 WL 3844172, at *3 n. 3 (W.D.N.Y. Aug. 8, 2011) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., Text Revision 2000)).

this Court finds that the ALJ committed no error in his assessment of Plaintiff's psychological impairment.  The ALJ gave the August of 2009 report some weight, but explicitly stated that this was limited by a lack of longitudinal history of treatment with that doctor.  (R. at 14.)  This is a valid consideration in determining the weight given a treating physician, and the ALJ was entitled to conclude that Dr. Pino's examination did not preclude a finding that Plaintiff was capable of working in a job involving no more than a moderate amount of stress.  See 20 C.F.R. § 404.1527(d)(2) (listing as valid considerations the length of the treatment relationship and the frequency of examination, as well as the nature and extent of the treatment relationship).  Indeed, Dr. Pino's report actually stated that Plaintiff's mental status examination "was within normal limits" despite a GAF score of 50, indicating serious symptoms or serious impairments in social, occupational, or school functioning.  (R. at 386.)[7]  The ALJ was further entitled to consider the inconsistency between these two findings, in further decreasing the weight given Dr. Pino's report.  See 20 C.F.R. § 404.1527(d)(4) (listing as valid consideration the consistency of the treating physician's opinion).

Moreover, the ALJ's assessment of Plaintiff's psychological impairment is supported by substantial evidence in the form of Dr. Baskin's mental status examination.  It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2).  Dr. Baskin found that Plaintiff could follow and understand simple directions and instructions, perform simple and complex tasks independently,

---

[7]Dr. Pino also found that Plaintiff met the diagnostic criteria for Panic Disorder, Dysthymia, PTSD, and Claustrophobia, but provided no further analysis.  (R. at 385-87.)

14

maintain attention and concentration, as well as a regular schedule, learn new tasks, make appropriate decisions, and relate adequately with others.  (R. at 315.)  Dr. Baskin also noted that Plaintiff "would have difficulty being able to deal with stress" which could "interfere to some degree with the claimant's ability to function on a daily basis."  (Id.)  However, the ALJ did not accord this last statement great weight on account of Plaintiff not having seen her own psychiatrist or psychologist up to that point.  (R. at 14.)  The ALJ thus relied on the majority of Dr. Baskin's opinion and, to a lesser extent, Dr. Pino's opinion, to find that Plaintiff could only work in a job with a moderate amount of stress.  This constituted substantial evidence in support of the ALJ's determination.  See Cutler v. Astrue, No. 10-CV-663A, 2011 WL 3844163, at *6 (W.D.N.Y. Aug. 30, 2011) (substantial evidence supported ALJ's assessment that plaintiff could be employed in a job with moderate amounts of stress where plaintiff had occasional limitations in his ability understand, remember, and carry out detailed instructions); Cross v. Astrue, No. 08-CV-0862, 2010 WL 2399379, at *13 (N.D.N.Y. May 24, 2010) (substantial evidence supported ALJ's finding that plaintiff could work in a low-stress environment where physicians opined that she could understand and carry out simple instructions, maintain attention and concentration, but would have difficulty handling stress); McGriff v. Comm'r of Soc. Sec., No. 1:08-CV-0952 (LEK/VEB), 2009 WL 4042126, at *6 (N.D.N.Y. Nov. 16, 2009) (finding no evidence that plaintiff suffered substantial loss of ability to perform basic work-related activities despite physician's report noting difficulties dealing with stress); Schacht v. Barnhart, No. 3:02 CV 1483(DJS)(TPS), 2004 WL 2915310, at *10 (D. Conn. Dec. 17, 2004) (approving of ALJ's finding that plaintiff required low-stress environment involving few independent decisions based on tension-related headaches).  Plaintiff's argument to the contrary, that the ALJ required further medical evidence, is unpersuasive.  See Payne

v. Astrue, No. 3:10-cv-1565 (JCH), 2011 WL 2471288, at *3 (D. Conn. June 21, 2011) (upholding ALJ's finding of "supervised, low stress environment" limitation where evidence did not support more significant cognitive or psychological impairment).

23.     Plaintiff's final argument is that the ALJ could not find her able to perform her past relevant work without first consulting a VE.  Plaintiff argues that the ALJ erred in not inquiring of a VE the vocational requirements of a restaurant hostess, and thus could not determine whether she was qualified for the position based on her RFC.  Plaintiff points to her own testimony concerning the position, which stated that the job actually required her to be on her feet for seven hours in an eight hour workday, which was in excess of the ALJ's determination that she could stand or walk for only six hours.  Plaintiff further asserts that her non-exertional impairments severely limited the range of work she was permitted to do, precluding reliance on the grid rules.

24.     During the fourth step of the sequential analysis, "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally."  Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003).  Pursuant to SSR 82-61, there are two ways for determining whether an individual retains the capacity to perform past relevant work:

1.     The actual functional demands and job duties of a particular past relevant job; *or*
2.     The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61, 1982 WL 31387, at *2 (S.S.A. 1982) (emphasis in original); see also Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981) (burden on claimant to show an inability to return to previous specific job and an inability to perform her past relevant work generally).

In line with these two approaches, the determination of whether an individual has

the ability to perform past relevant work requires the ALJ to consider:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

Spreruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008) (quoting SSR 82-62, 1982 WL 31386, at *3 (S.S.A. 1982)).

25.     In this case, the ALJ appears to have relied on the first approach.  The ALJ noted that Plaintiff had described her past position as a restaurant hostess as not entailing any lifting, but as requiring her to be on her feet most of the time.  (R. at 15.)  Comparing that testimony to her RFC, the ALJ determined that she would be able to perform it "as actually performed."  (Id.)

26.     Upon review of the hearing testimony, this Court is unable to agree with the ALJ's conclusions.  At the August 13, 2009 hearing, Plaintiff testified that she would spend approximately two and a half hours lifting 20 pounds or less in the course of helping clean off tables for servers.  (R. at 40.)  When asked whether she had to lift more than 20 pounds during those two and a half hours, she replied "I honestly don't know."  (Id.)  She also stated that she was on her feet most of the day.  (Id.)  When reminded of her adult disability report form, Plaintiff clarified that she stood and walked 7 hours in an 8 hour day, sat for 1 hour, and lifted 10 pounds or less.  (Id.)  The ALJ characterized this as "light work."  (R. at 41.)

Even accepting Plaintiff's adult disability report as more accurate, Plaintiff spent 7 out of 8 hours on her feet.  The ALJ found that Plaintiff could stand/walk, at most, 6 hours

in an 8 hour workday.  (R. at 11.)  Comparing Plaintiff's RFC to her testimony, it is clear

that she was not able to perform her past job as she described it.  See SSR 96-8p, 1996

WL 374184, at *2 (defining RFC as an "individual's *maximum* remaining ability") (emphasis

in original).  Although the ALJ found Plaintiff's testimony as to the severity of her symptoms

not credible, nothing suggests that he made a similar determination as to her description

of the requirements of a restaurant hostess position.  See Wood-Monroe v. Astrue, No. 05-

CV-1570, 2008 WL 4283412, at *6 (N.D.N.Y. Sept. 16, 2008) ("[C]ommissioner has the

duty to adequately inquire into the demand of [claimant's] past relevant work so that a

correct decision can be reached as to [claimant's] ability or inability to perform [past

relevant work].").  Even if he did, this would leave the ALJ with no description of her past

job, and would preclude finding her capable of returning to it.  See Kerulo v. Apfel, 98 Civ.

7835, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) ("[I]n order to determine at step four

whether a claimant is able to perform her past work, the ALJ must make a specific and

substantial inquiry into the relevant physical and mental demands associated with the

claimant's past work, and compare these demands to the claimant's residual capabilities.").

This Court further notes that it does not appear that the ALJ inquired into the mental

demands of her past work, and whether these would conform to his determination that she

was only able to work in a job with up to a moderate level of stress.  See Taylor v. Comm'r

of Soc. Sec., 8-CV-0846 (VEB), 2011 WL 940319, at *4-*5 (N.D.N.Y. Mar. 16, 2011)

(noting ALJ's failure to adequately inquire into mental demands of plaintiff's past relevant

work, including level of stress).

        27.     The Commissioner appears to urge this Court to uphold the ALJ's ruling on

the second of SSR 82-61's approaches.  While conceding that the ALJ did not specifically

rely on the United States Department of Labor's *Dictionary of Occupational Titles*, the

Commissioner nevertheless argues that the ALJ properly found Plaintiff capable of performing light work and was entitled to rely on the Department of Labor's classification of the job as light work.  See 20 C.F.R. § 416.960(b)(2) (ALJ may make use of DOT to determine claimant's ability to perform past relevant work).  Pursuant to DOT code 310.137-010, the position of "HOST/HOSTESS, RESTAURANT" is classified as "Strength: Light Work," with a reasoning level of 4, and a math level of 3.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* ("DOT"), 1991 WL 672671 (4th ed. Revised 1991).  The specific vocational preparation rating is a level six, requiring over 1 year up to and including 2 years to learn.  Id.[8]

28.     Although it certainly appears that Plaintiff's RFC may be compatible with the DOT's description of the restaurant hostess position, this Court is not prepared to substitute its reasoning for that of the ALJ.  SSR 82-62, 1982 WL 31386, at *3 (noting that in determining whether a claimant has the RFC to perform past work "[e]very effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit"); see also Sanderson v. Astrue, No. 08-CV-1177 (GTS/VEB), 2011 WL 1113856, at *9 (N.D.N.Y. Jan. 19, 2011) (rejecting Commissioner's argument that ALJ's determination was consistent with DOT codes where ALJ's decision contained no such citations).  District court's are prohibited from accepting the Commissioner's *post-hoc* rationalizations for an ALJ's decisions.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962)).  Further, as already stated, the ALJ's determination that Plaintiff can only work in a job with a moderate amount of stress and suffers from adjustment

---

[8]From the hearing testimony alone, it appears that Plaintiff worked as a hostess for about one year (R. at 40), although her disability report form states that she held the title of hostess from 1993 - 1999 (R. at 118).

disorder with mixed anxiety and depression makes this is a case in which "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62, 1982 WL 31386, at *3.  In particular, the DOT job description provides that a restaurant hostess must "[s]chedule[] dining reservations . . . . [a]djust[] complaints of patrons . . . . coordinate[] activities of dining room personnel . . . . [and] interview, hire, and discharge dining room personnel."  DOT, 1991 WL 672671.  Having failed to adequately explain how his RFC assessment comported to the specific tasks Plaintiff formerly performed, the ALJ's subsequent failure to consult other resources, such as the DOT, necessitates remand.  See Taylor, 2011 WL 940319, at *5 (remanding where ALJ did not discuss past relevant work's mental demands and failed to consult additional resources, including DOT); Steficek v. Barnhart, 462 F. Supp. 2d 415, 421 (W.D.N.Y. 2006) (no substantial evidence supported ALJ's finding that plaintiff could return to past relevant work where ALJ made no findings as to mental demands of such work despite finding plaintiff to suffer from anxiety disorder, dysthymia, and personality disorder).

29.   Having found remand necessary, this Court does not reach Plaintiff's additional argument that the ALJ was required to consult a VE on account of non-exertional impairments which significantly limited her work capacity.

30.   After carefully examining the administrative record, this Court finds that it cannot evaluate whether the ALJ's decision was supported by substantial evidence.  The ALJ has not clearly explained how Plaintiff's description of her past relevant work comports with his RFC assessment.  It further does not appear that the ALJ inquired into the mental demands of her position as a restaurant hostess.  Moreover, the ALJ did not consult

resources, such as the DOT, to determine that Plaintiff was capable of the functional demands and job duties of that occupation as generally required by employers throughout the national economy.  On remand, the ALJ should explicitly consider the mental demands of Plaintiff's former job and state its requirements, and the evidence supporting that description.  If appropriate and necessary, the ALJ is also instructed to consult additional sources, including the DOT, and a VE.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is DENIED.

FURTHER, that the case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   March 24, 2012
            Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court